All right, our next case is 19-11389, Retana v. Twitter. We'll first hear from Plaintiff's Counsel. Good afternoon, your honors. May it please the court. In 2016, Congress enacted a statute, JASTA, the Justice Against Sponsors of Terrorism Act, which added secondary liability to the Anti-Terrorism Act. Before that time, there was only direct liability. And in doing so, Congress was effectively saying that if you help terrorist organizations and those terrorist organizations go out and commit terrorist acts, we're going to go and hold you accountable, which is something that did not exist before. Now, one of the aspects of JASTA is that its purpose is to provide the broadest possible basis of recovery consistent with the Constitution of the United States. It doesn't say Constitution and laws. It limits it to the Constitution only. This is a singular statement that exists nowhere else in the federal code that we were able to find. And I think the fact that it is limited to the Constitution is extremely important. Now, one of the things that is surprising here is that while courts have uniformly found that Congress intended to add secondary liability, to the best of my knowledge, no court has ever found that any defendant has ever been responsible for secondary liability. So, in essence, they don't question that Congress knew what it was doing in creating this, but yet seemed to find that Congress didn't define what secondary liability was in sufficient precision to allow liability to attach. And this is extremely important. Now, this case was decided at the 12B6 stage. There is no heightened pleading requirements associated with an anti-terrorism case. The standard pleading must be taken as true as long as it's plausible. But yet consistently, and in this particular case, the facts were taken and just assumed that they could not be plausible. What do we have to do to show here for liability to attach to the defendants? In no particular order, because I believe that one of the analytical difficulties that have been faced by some of the courts is trying to get from point A to point Z only going one way. And maybe it's to look at it from both different directions and see just how far apart and whether we can meet in the middle. So, for example, we need to show that there's an act of international terrorism. In this particular case, the Dallas police shooting, the actual shooter was an individual named Micah Johnson. Okay. Was there a connection between Micah Johnson and Hamas? Was there a connection between Hamas and the defendants? Was there substantial support? Did the defendants know what was going on here? What we don't need to show is were the defendants aware of the particular attack? Did they know that in providing help to Hamas, that Hamas was going to be involved in the Dallas police shooting? Did they have to know who Micah Johnson was? Did they have to know what he intended to do? Did Micah Johnson ever have to look at defendant sites? None of that is required to establish liability here. Well, then what makes it an international act of terrorism? It didn't occur. One of the things that would make it that is if it occurred outside the United States. We know that's not the case. Occurred in Texas. So the second thing is that it transcended national boundaries. So how do you transcend national boundaries? Your Honor, because of the connection to Hamas, there's no question Hamas is a foreign terrorist organization. It's been designated as such by, you know, by the State Department. The stated purpose of Hamas is to expand this sphere of influence into places they can't get to. Hamas cannot easily come to the United States and engage in terrorist activities. So they have relied upon social media to reach out beyond their boundaries, specifically into the United States, and call for Americans to engage in terrorist conduct, which is exactly what happened here. So that's how it transcends national boundaries. This is exactly what they intend to do. It's how they use social media and use these platforms is to promote their violent agenda. It's not just with Hamas. It's with ISIS. We see this consistently as with other. There have been obviously other attacks that your Honor's are probably aware of the the San Bernardino massacre, the Pulse nightclub in Orlando. These are attacks in the United States where once again, they reached out into the United States. So that's the international terrorism aspect. But importantly, your Honor, what did Hamas do to influence this terrible incident in Dallas? Hamas has called for the killing and execution of police officers and for violent attacks. Hamas came to the United States and met with various radical groups. They have a front in the United States, which has met with radical groups. No, no allegation. They met with the shooter in Dallas. We don't have any evidence that they met with a shooter in Dallas. But your Honors, we do have evidence that Micah Johnson was radicalized before he even went to Dallas. We have a witness who we have not identified by name for her safety sake, who met Micah Johnson when he was in Los Angeles after he had returned from military service in the Middle East and engaged in conversation with her. She came to learn that he was very pro-Palestinian, that believed that violent acts were appropriate, that he took her to and showed her extremist content for the Palestinian cause. So we have two paths here. Now at the 12B6 stage, your Honors, that should be enough to allow for discovery. These are not just formulaic pleadings. They're not lacking of facts. There's a very specific fact that he was radicalized by the Palestinians before he got here, which is the Palestinian Authority, is Hamas. So there is that. Just to clarify, do you allege that Johnson planned or prepared for the shooting outside the U.S. at all? Your Honors, what we're saying is we don't know exactly what he did, but we know that he was radicalized before he came here. He was sympathetic to the Palestinian cause and believed that violent action was appropriate. Does that mean he had already determined that he was going to engage in the Dallas attack? I can't say that at this time, but certainly we have evidence that he was already radicalized to take violent action. Now, if you read through our pleadings at the 12B6 stage, we have alleged a number of things that are important here. We have alleged that Hamas is a designated terrorist organization. I don't think there's much dispute of that. We have alleged that Hamas is dependent upon social media to recruit, radicalize, and raise money. We have alleged that Hamas would not have its reach if not for social media. We have alleged that Hamas called the killings of the Palestinians and the killing of police officers. You said Hamas is a registered foreign terrorist organization or recognized as such by the United States. That foreign terrorist organization has to commit, plan, or authorize the act of terrorism, assuming that definition is met. So, while case law says that, I guess, radicalizing someone through the internet, but not funding, training, or directing the actual incident meets that requirement. Well, I think you could see that in the Boehm case, Your Honor, where in Boehm 2, I think it essentially said, if you give a loaded gun to a child, there's nothing inherently violent about that, but there's certainly an extreme risk that that child is going to use that gun. Well, let's expand upon that just a little bit here, Your Honor. We have a situation where, what if you have an organization, you have somebody who puts a gun in a schoolyard, a loaded gun, okay, with the hopes that a child is going to come along, find that gun, and use that gun to commit a violent act. They may never know who's going to do it. They may never know how it's going to be used, but there is the desire, the calling for that to happen. If Hamas or some other organization sent weapons to this individual, I think it's a very different case. Which of those three words in the text, committed, planned, or authorized the act, which may be more than one you think, but which of those words do you think Hamas did? Did they commit it, plan it, or authorize it, or all of the above? But tie it to the text there. Okay. Planned specifically, we don't have any evidence that they specifically planned the that calling for the execution of police officers, inciting an individual to do that, is the same as committing and authorizing the attack. Now, Your Honor, this is, once again, I come back to, this is 12B6. Exactly the nature of the relationship, because we know that there was an independent relationship with Micah Johnson, that's the subject of discovery. But at the 12B6 stage, we should be taken as true. We have provided factual allegations that they were involved in the attack by calling for the execution. The exact effect, we have evidence they met with the radical groups. We have evidence that Micah Johnson pledged allegiance to these radical groups. Exactly the extent of the interaction, that remains to be seen through discovery. Tell me, point to me in your complaint where you make the allegation that Hamas committed, planned, or authorized the shooting. Your Honor, I can't give exact paragraphs. I can certainly get that to you, but we have absolutely said that they have called for the execution of police officers. We can show that a, we show specifically that a graphic that was used was picked up by the radical groups and used to, they plastered a police officer's image on that. We show that they met, there was a front in the United States who met with these radical groups. And we think all of that can certainly be reasonably inferred that they committed, that they committed or authorized the attack in Dallas. I don't know that we use the specific word committed or planned, but I believe that we do. I just, I'm sorry, I can't get you the exact paragraph in this context. I wish I could given the limited time. I mean, if tomorrow there's a tragic shooting of a police officer, would you say Hamas planned or authorized that because they've they've been on social media allegedly promoting that type of activity? Um, not necessarily, your honor. I can't, I can't say one way or viewed it. Um, if the shooter viewed it, it's possible. I can't, I think that it's more than, I, I just don't think that you could say one way or the other. That's precisely the point, your honor, that it's a factual question that would need to be evaluated. Oh, it needs to be a plausible, plausible allegation that Hamas committed, planned or authorized the international act of terror. Your honor, it's not really subject to much dispute that Hamas called for the execution of police officers. All right. So that's what I'm talking about because of the, because of that, are you saying that any shooting of a police officer in the planned or authorized by Hamas? No, I'm not saying that there has to be a connection between the shooter and Hamas of some kind. There has to be, there has to be something there. And that connection here is, is just, you've said it before, but just, just tell me what that connection is here. The connection is, is that Hamas called for the killings of police officers, came to the United States, met with set radical groups, have a front in the United States. No, it was Johnson. What's the connection between Johnson and all of Hamas's messaging? There is a connection, you know, like I said, number one, there's the connection because he was radicalized before he got here. Okay. Even separate apart from that, before he even went to Dallas, he was already radicalized to violent action by the, by Hamas, by the Palestinians, which we have pled. Secondarily, he was clearly influenced by the radical groups who, who met with Hamas and were involved in the calling for the execution of police officers. Now, it may be that after discovery, we're not able to adequately establish the connection between the two, but we still should. How about between the two and Twitter, Google, and Facebook? That's another step. Oh, well, of course, but your honors, there's no question that defendants are fully aware that Hamas, ISIS use their platforms. They're fully aware that they conduct terrorist activities using these platforms. They proclaim that they take down these sites on a regular basis. In order to, for people to become radicalized, there has to be something other than the secret handshake. What I mean is the content has to be found. We have evidence that these companies promote extremist content to individuals. We have evidence that they, when they, when you look at something on Facebook, for example, what you see is dependent upon what you ask to look at and what they know about you, that they will match advertising and promoted content based upon that. So this is, there is certainly, we have alleged in hundreds of paragraphs, the connection between social media and social media and Hamas and how dependent Hamas is upon this. I mean, you know, Hamas would have nowhere near the reach that they have today, if not for social media. I think we quote in our brief that, you know, Radio Free America, they spent hundreds of millions of dollars in order to reach people. And for free, Hamas can reach far more people, can reach far more people than that. Now, I'm just about to run out of time. You know, looking at the Halberstam factors, and one thing I want to point out in the last few minutes, and then I'll finish up on rebuttal. Defendants have argued that the purpose language of JASTA really has no import, but at the same time, the Halberstam factors are viewed as the standard to assess causation. Both of them are in part of the introductory part of JASTA. I don't think that you can say that Halberstam is the way to do it because it's an introductory part, but the purpose, which says the broadest possible basis, is not. I think I'm out of time, your honors, and I'll finish up on my rebuttal. Thank you. All right, you have your five minutes for rebuttal, and we'll now hear from the defendants. Thank you, your honor, and may it please the court. Ari Holzblatt, counsel for Twitter, presenting argument on behalf as well of Google and Facebook. As Judge Boyle explained, the fundamental flaw in plaintiff's case is that the complaint is, quote, devoid of allegations connecting Hamas to the shooting. Without that connection, plaintiff's aiding and abetting claim fails on multiple independent grounds. First, as the district court held, without Hamas, the Dallas shooting was not an act of international terrorism, since Hamas is the only international connection that the complaint or my friend today even attempts to posit. Second, without Hamas, there is no foreign without Hamas. Any assistance that defendants allegedly provided to Hamas is irrelevant, because Hamas was not the person who committed the shooting. That person was Micah Johnson. No allegation that defendants aided or abetted Mr. Johnson. Now, my friend said that Hamas committed the attack, committed the Dallas shooting, but that is wrong. The person who is Micah Johnson, not Hamas. The complaint, and I'd like to talk about some of the specific allegations. The complaint describes it as planned and carried out by Johnson alone. There's no allegation that Hamas itself carried out any part of that shooting, and my friend did not claim otherwise today. Nor is there any allegation of any direct connection between Hamas and Micah Johnson. There's not even an allegation that Micah Johnson pledged allegiance to Hamas, or that Hamas claimed credit for this shooting after the fact. Now, my friend referred to allegations that Mr. Johnson was radicalized two years before the shooting. What he's referring to is paragraphs 235 to 240. These paragraphs allege that more than two years before the shooting, Micah Johnson directed a Ms. X to view a Twitter page that allegedly called for the destruction of Israel and, quote, reflected Hamas messages. Now, there's no allegation that Hamas created or even posted that page. There's no allegation that the page said anything about attacks in the United States or against police officers, as opposed to against Israel, let alone a reference to the Dallas shooting. And this page predates the Dallas shooting by more than two years. Otherwise, the complaint tries to link Hamas to the Dallas shooting through supposed connections with an assortment of different groups lumped together under the label Black Separatist Hate Groups. And none of these groups are alleged to have any contact with both Hamas and with Micah Johnson or even necessarily with each other. Now, the complaint describes, for example, at paragraphs 222 to 223, a 10-day trip during which various artists, journalists, and organizers allegedly met with pro-Palestinian individuals and organizations, not with Hamas itself. And the complaint alleges, for example, at paragraphs 217, 220, and 232, that Hamas sympathizers or allies or, quote, front groups publicly expressed support for protests of police in the United States. Now, none of these groups are alleged to have had any contact with Micah Johnson. Instead, the complaint alleges that other groups, it points to other groups, for example, at paragraphs 250 to 253. And it says that Micah Johnson liked the Facebook pages of these other groups and supposedly that propaganda from these other groups allegedly radicalized Micah Johnson. There's no allegation that these other groups, the ones that Micah Johnson liked, had any contact with Hamas. And there's no allegation that the groups that supposedly had contact with Hamas or Hamas allies or Hamas sympathizers or Hamas front groups had any contact with Micah Johnson. So we have two sets of groups, neither of which had any contact with each other or with Micah Johnson. Now, my friend said that Hamas called for the killing of police officers in the United States, but he couldn't cite the court to any paragraph that said so. That's because there is no such paragraph. I want to repeat that, your honors. There is no paragraph of the complaint that established that Hamas, Hamas itself, called for the killing of police officers in the United States, let alone anything having to do with the Dallas police shooting. The only paragraph of the complaint that my friend pointed to was, I believe, paragraphs 218 or 219, which supposedly show a picture of a police officer being beheaded. Now, it's not clear to me that this picture is even connected to any Hamas propaganda. The famous picture here is actually, I think, as we all know, ISIS propaganda, not Hamas propaganda. But even setting that aside, there's no allegation that Hamas created the picture that was supposedly inspired by Hamas propaganda, the picture of Hamas, of a police officer being beheaded. There's no allegation that Johnson ever saw this picture. This is certainly not, as was claimed, an allegation that Hamas called for the killing of police officers in the United States. Now, Mr. Allman also said that Hamas came to the United States. There's no allegation that Hamas came to the United States. There's certainly no allegation that Hamas came to the United States and met with Micah Johnson. There's certainly no allegation that Hamas came to the United States and even met with these so-called black separatist hate groups that are lumped together in the complaint. At most, there's an allegation that certain other organizations are alleged to be allies or sympathizers or front groups of Hamas and that those organizations may have called for protests of police. That is not a connection that connects Hamas to Micah Johnson or the Dallas police shooting. As I said at the outset, there's no allegation that Hamas or any of these groups planned, prepared for, or helped to carry out the Dallas police shooting. And the enough to establish what the statute actually requires, which is that under the theory of this case, that Hamas, as opposed to Micah Johnson, actually committed the shooting. Now, this case is therefore indistinguishable. In fact, it's actually even easier than the Sixth Circuit's decision in the Crosby case, where victims of Omar Mateen's attack on the Pulse nightclub in Orlando, Florida, sued the same defendants on the theory that Mateen had been self-radicalized by ISIS propaganda that he saw online. Judge Nalbandian, writing for a unanimous Sixth Circuit panel, upheld dismissal in that case because there were no allegations that ISIS had committed the attack or that any defendant had aided or abetted Mateen. As I said, this case is actually even easier, for it relies on the same self-radicalization theory, but without any allegations that Micah Johnson ever saw any Hamas content calling for anti-police violence, that Micah Johnson ever pledged allegiance to Hamas as Mr. Mateen had done, or that Hamas ever claimed credit for the shooting as ISIS did. Now, this defect, that no defendant is alleged to have aided and abetted the person who committed the shooting, is sufficient to affirm, but the lack of allegations connecting Hamas to Micah Johnson or to the shooting also establishes a second defect, one that the Crosby court also relied on. As your honors asked, Section 2333D requires that a foreign terrorist organization have committed, planned, or authorized the act of international terrorism. As I've already explained, Hamas did not commit the shooting. My friend admitted that Hamas did not plan the shooting, and it also did not authorize the shooting. Authorization, as the Crosby court recognized, connotes some relationship of authority between the foreign terrorist organization and the perpetrator, where the shooter both needed and received Hamas's official permission. Again, Johnson is not alleged to have acted alone. He is not alleged to have had any direct contact with Hamas, and all there is is this supposed chain of connection between Hamas or Hamas sympathizers or front groups and so-called black separatist hate groups, no one of which is alleged to have any contact with both Hamas and Micah Johnson. Finally, again, the disconnect between Hamas and Micah Johnson or the Dallas shooting also means that plaintiffs have failed to plausibly allege that the shooting constituted an act of international terrorism. Because Hamas, without Hamas, the shooting had no international or transnational component as required by Sections 2331, paragraph 1C. In fact, my friend has acknowledged that without Hamas, that international component is absent. As Judge Costa, as you mentioned, the shooting was planned, it was prepared, and it was carried out by a U.S. citizen. It was entirely in the United States, and it was against U.S. victims. In no sense was this an act of international terrorism. For all these reasons, your honors, the complaint fails to establish the critical component, the connection between Micah Johnson and Hamas. And as I've said, without that missing connection, plaintiffs cannot satisfy three necessary requirements of the statute, that defendants aided and abetted the person who committed the shooting, that the act was planned, committed, or authorized by a foreign terrorist organization, or that the shooting was an act of international terrorism. For all these reasons and the reasons we've laid out in our briefs, we urge the court to affirm. Unless the court has further questions, I'm happy to yield my time back to the court. All right, thank you. Rebuttal, Mr. Altman? I think you're muted. Okay, there we go. Your honor, I had a bit of time, and I'd like to point the court to address your questions. Paragraphs 215 of the complaint, 215 through 220 talks about Ferguson, and the whole concept with Ferguson was that Ferguson involved was looking for violence against police officers based on what happened. So there is a connection between Hamas calling for violence, we stand with Ferguson, etc. So there is something there. I apologize, I wasn't able to point to that. But once again, there's still the independent radicalization of Micah Johnson before he even got there. The fact that it was two years before, so what? Defendants, my friend, seems to distinguish. Let's say Hamas had trained an individual and said to this individual, go forth, be free, kill Jews. We don't care how you do, we don't care where you do, we don't care when you do it. The fact that they didn't know about the specific attack that that person may do should absolve them of any responsibility. I don't think anybody would go along with that. On the credit issue, it's one thing that's kind of amusing. In the Orlando attack, ISIS claimed credit for the attack. Defendants said that doesn't mean anything because they took credits, they're just trying to ride the coattails. Now here, they say they didn't take credit for the attack. So that means it wasn't done. But Your Honors, I really want to end with something I think is very important. We didn't talk much about Section 230 here, I'm sure Your Honors are aware of it. But I think the parallels here are very important. And I just want to read to the court in my three minutes that's left. There was a case that a CERT petition was filed. And unfortunately, we didn't get a chance to do the 28-J, but we will do one in the next day. In denying certification, this is the Mac vs. Enigma systems. It's learning edition second 197, 201 to 202. Justice Thomas wrote an opinion in denying CERT that I think relevant here with 230. And I think the same thing would apply with respect to looking at the Anti-Terrorism Act. So I'm just going to read it. I think it's it says it all. Pairing back the sweeping immunity courts have read into 230 would not necessarily render defendants liable for online misconduct. It simply would give plaintiffs a chance to raise their claims in the first place. Plaintiffs still must prove the merits of their cases, and some claims will undoubtedly fail. Moreover, states and the federal government are free to update their liability laws to make them more appropriate for an image-driven society. Extending Section 230 immunity beyond the natural reading of the text can have serious consequences. Before giving companies immunity from civil claims for knowingly hosting illegal child pornography or for race discrimination, we should be certain that is what the law demands. Without the benefit of briefing on these merits, we will not decide today the correct interpretation of 230, but in an appropriate case, it behooves us to do so. I think the same thing could be said here with respect to these cases. They've almost been given an immunity because nobody wants to allow discovery to take place to find out the exact nature of the relationship between these cases. I know they argued 230, but Judge Boyle didn't rely on that at all in dismissing this case. Agreed, Your Honor, but it was raised. But I'm drawing the parallel here that I think the same thing you could have substituted in JASTA for Section 230, and it would read almost the same way, that everybody's basically giving these companies a path because they're never finding that there's ever a connection. Now, one of the things, you know, my brother counsel talks about the person. One thing is clear. JASTA does not say that the person being charged with the crime is the person who literally pulls the trigger. That's not required. It doesn't matter if the person who pulls the trigger ever looked at, ever met, or directly received the benefits. If the defendants provided substantial material support to the terrorist organization who then is responsible for the terrorist attack, that is sufficient to hold them accountable. There don't have to have known Micah Johnson. They don't have to have known anything about Dallas. By enabling Hamas to conduct terrorist operations, they have put themselves in the seat of being held responsible for the kind of conduct that Hamas engages in. Defendants cannot say they didn't know Hamas was a terrorist organization. They can't say they didn't know that Hamas was using their sites. They can't say that they didn't know that they were promoting terrorist content because they do it. All of these things happened. The question here is at the 12B6 stage, have we pled enough? It may be that under summary judgment, we will not be able to establish, but that's the principles behind 12B6. We must be given reasonable inferences. Thank you, your honors. All right. Thanks to both sides for the argument, and you can exit the Zoom.